

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TIA MCNEESE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 3-04CV-1174-D |
| EXEL NORTH AMERICAN LOGISTICS, INC. | § | |
| AND EXEL, INC. | § | |
| | § | |
| Defendants | § | |

> **U.S. DISTRICT COURT**
> **NORTHERN DISTRICT OF TEXAS**
> **FILED**
>
> OCT - 4 2005
>
> CLERK, U.S. DISTRICT COU.
> By _____
> Deputy

## PLAINTIFF TIA MCNEESE'S BRIEF FOR FULL OR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT EXEL NORTH AMERICAN LOGISTICS, INC.

Respectfully submitted,

William M. Lamoreaux
Attorney for Plaintiff Tia McNeese
900 Jackson Street Suite 180
Dallas, TX 75202
Tel     214/747-2012
Fax     214/747-3212
Texas Bar No. 11852800

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

OVERVIEW OF FAIR LABOR STANDARDS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

OVERVIEW REGARDING ADMINISTRATIVE EXEMPTION . . . . . . . . . . . . . . . . . . . 4

LAW: SALARY REQUIREMENT FOR EXEMPTION . . . . . . . . . . . . . . . . . . . . . . . . . 5

PLAINTIFF WAS NOT SALARIED NEGATING EXEMPT STATUS . . . . . . . . . . . . . . . 6

LAW: SUBJECTING AN EMPLOYEE TO DISCIPLINARY DEDUCTIONS NEGATES
    EXEMPT STATUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PLAINTIFF WAS DISCIPLINED AND SUBJECT TO DISCIPLINARY DEDUCTIONS FOR
    NONSAFETY RELATED REASONS NEGATING EXEMPT STATUS. . . . . . . . . . . 9

LAW: EXEMPTION REQUIREMENT THAT PRIMARY DUTY BE PERFORMING OFFICE
    OR NONMANUAL WORK RELATING TO MANAGEMENT POLICIES OR
    GENERAL BUSINESS OPERATIONS OF EMPLOYER . . . . . . . . . . . . . . . . . . . . 11
    Primary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Directly related to the management or general business operations . . . . . . . . . . . . . . 11

PLAINTIFF'S PRIMARY DUTIES WERE NOT OFFICE OR NON-MANUAL WORK
    RELATING TO THE MANAGEMENT POLICIES OR GENERAL BUSINESS
    OPERATIONS OF DEFENDANT NEGATING EXEMPT STATUS . . . . . . . . . . . . 12

LAW: EXEMPTION REQUIREMENT OF EXERCISE OF DISCRETION AND
    INDEPENDENT JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Discretion and Independent Judgment as Distinguished from Skills and Procedures . . . 16
    Decisions in Significant Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PLAINTIFF NEVER EXERCISED DISCRETION OR INDEPENDENT JUDGMENT IN ANY
    POSITION SHE HELD WITH DEFENDANT NEGATING EXEMPT STATUS . . . . 18

LAW: DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Regular Rate of Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Compensable Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

PLAINTIFF'S DAMAGES ARE $25,380.00 USING THE TWO YEAR STATUTE OF
     LIMITATIONS AND $59,933.25 USING THE THREE YEAR STATUTE OF
     LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

LAW:  LIQUIDATED DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PLAINTIFF IS ENTITLED TO $25,380.00  IN LIQUIDATED DAMAGES USING THE TWO
     YEAR STATUTE OF LIMITATIONS AND $59,933.25 USING THE THREE YEAR
     STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-689 (1946) . . . . . . . . . . . . . . . . . . 22

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) . . . . . . . . . . . . . . . . . . . . . . . 3

Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 739 (1981) . . . . . . . . . . . . . . . . . 3

Bernard v. IBP Inc. of Neb., 154 F.3d 259, 266-267 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 23

Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir. 1988) . . . . . . . . . . . . . . 4

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 2, 3

FDIC v. Giammettei, 34 F.3d 51, 54 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 209 (1966) . . . . . . . . . . . . . . . . . . . . . . 2

LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1262-1263 (5th Cir. 1986) . . . . . . . . . . . 23

Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (CA 5, 2000) . . . . . . . . . . 3

Reich v. Tiller Helicopter Services, Inc., 8 F.3d 1018, 1030 (5th Cir. 1993) . . . . . . . . . . . . . . 23

Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 297 (1985) . . . . . . . . 3

## FEDERAL STATUTES

29 U.S.C. §211(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. §213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 U.S.C. §260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL RULES

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL REGULATIONS

29 C.F.R. Part 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §516.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 C.F.R. §541.118(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 C.F.R. §541.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §§516.2, 516.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIA MCNEESE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 3-04CV-1174-D |
| EXEL NORTH AMERICAN LOGISTICS, INC. | § | |
| AND EXEL, INC. | § | |
| | § | |
| Defendants | § | |

Now comes Plaintiff Tia McNeese who files this Brief in Support of Motion for Full or

Partial Summary Judgment and would show the Court as follows.

(Note, Defense counsel has indicated to Plaintiff's counsel that Plaintiff's employer was

Exel North American Logistics, Inc. and not Exel, Inc. Based on this representation, Plaintiff has

agreed to nonsuit Exel, Inc. at an appropriate time. For purposes of this brief, the term

"Defendant" refers to Exel North American Logistics, Inc. only and not Exel, Inc. Since making

this agreement at the beginning of the lawsuit, Defense counsel has informed Plaintiff's counsel

that Exel North American Logistics, Inc. not longer exists as an entity causing some concern to

Plaintiff's counsel. Nevertheless, Plaintiff only seeks summary judgment against Exel North

American Logistics, Inc. at this time). .

## SUMMARY OF ARGUMENT

There is summary judgment evidence that negates the Defendant's affirmative defense that Plaintiff is exempt from the overtime provisions of the Fair Labor Standards Act on any one or more of the four following grounds:

1. Plaintiff was not salaried.

2. Plaintiff was subject to disciplinary wage deductions for nonsafety related reasons

3. Plaintiff's primary duty did not involve performing office or non-manual work relating to management policies or general business operations of employer or employer's customers.

4. Plaintiff did not regularly exercise discretion and independent judgment.

There is summary judgment evidence that Plaintiff has suffered actual damages under a two year statute of limitations in the amount of $25,380.00 and actual damages under a three year statute of limitations in the amount of $59,933.25.

Finally, there is summary judgment evidence that Plaintiff is entitled to liquidated damages in an amount equal to her actual damages.


## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper in any case where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The defendant-employer who claims an exemption from the Fair Labor Standards Act has the burden of proving that the exemption applies. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 209 (1966); Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990).

2

A plaintiff moving for summary judgment on a defendant's affirmative defense may satisfy her burden by (1) submitting evidence that negates an essential element of the defendant's defense or (2) showing that the defendant's evidence is insufficient to establish an essential element of its defense. FDIC v. Giammettei, 34 F.3d 51, 54 (2nd Cir. 1994).

The ultimate decision whether an employee is exempt from the Fair Labor Standard Act's overtime compensation provisions is a question of law. Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (CA 5, 2000) citing Dalheim, supra.


OVERVIEW OF FAIR LABOR STANDARDS ACT

The remedial purposes of the Fair Labor Standards Act should guide the Court's analysis of Defendant's Motion for Summary Judgment. The Supreme Court has observed that "... the Fair Labor Standards Act was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 739 (1981). Similarly, in Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 297 (1985), the Supreme Court noted that it has consistently construed the Fair Labor Standards Act liberally, recognizing that broad coverage is essential to accomplish the goals of this remedial legislation.

Consistent with the liberal construction given to the Fair Labor Standards Act, the Supreme Court has directed that exceptions to the Fair Labor Standards Act's minimum wage and overtime compensation be narrowly construed. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960).

3

The Fifth Circuit has followed the Supreme Court's lead regarding liberal interpretation of the statute in favor of the employee holding that exemptions from the Fair Labor Standards Act are to be narrowly construed against the employer. Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir. 1988)


OVERVIEW REGARDING ADMINISTRATIVE EXEMPTION

The Defendant claims that the Plaintiff is exempt from payment for overtime under what is called the Administrative Exemption.

29 U.S.C. §213(a)(1) of the Fair Labor Standards Act provides in relevant part that an employee employed in a bona fide administrative capacity is exempt from the overtime provisions of the Fair Labor Standard. Act.

The Department of Labor has issue regulations covering the various exemptions from the Fair Labor Standards Act. See 29 C.F.R. Part 541. These regulations were amended on August 23, 2004, after Plaintiff left her employment with Defendant on December 18, 2003. The "old" regulations apply to Plaintiff's situation.

Two tests for the administrative exemption are set forth in 29 C.F.R. §541.2. There are a "long test" and a "short test":

Administrative Employees  Long Test

> 1. Primary duty is to (i) perform office or non-manual work relating to management policies or general business operations of employer or employer's customers; or (ii) perform administrative functions in a school system or educational institution, and
>
> 2. Customarily and regularly exercise discretion and independent judgment, and

3. Regularly and directly assists a proprietor, or an executive or administrative employee; or works only under general supervision along specialized or technical lines, requiring special training, experience or knowledge, or executes responsibilities under only general supervision, special assignments and tasks, and

4. Spends 20% or less of time performing non-exempt work. Retail or service establishment administrative employees must spend less than 40% of their weekly hours performing nonexempt work, and

5. Receives a salary of at least $155 a week, exclusive of board, lodging, or other facilities.

Administrative Employees Short Test

1. Primary duty is to (i) perform office or non-manual work relating to management policies or general business operations of employer or employer's customers; or (ii) perform administrative functions in a school system or educational institution, and

2. Regularly exercises discretion and independent judgment, and

3. Receives a salary of at least $250.00 per week.

## LAW: SALARY REQUIREMENT FOR EXEMPTION

Under both the short test and the long test, the exempt administrative employee must be salaried. According to the Department of Labor regulations, an administrative employee is paid on a salary basis if she regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of her compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. 29 C.F.R. §541.118(a) and (a)(1). Exempt employees may not be paid by the hour. The salary cannot be subject to reduction because of variations in the quality or quantity of work performed. The exempt employee must receive a full salary for any week in which he or she performs work, without regard to the number of days or hours worked.

5

PLAINTIFF WAS NOT SALARIED NEGATING EXEMPT STATUS

Although Plaintiff was nominally salaried, in fact on at least three occasions there were

deductions from her paycheck for less than one day negating her "salaried" status.

On May 7, 2002, Vice President for Human Resources Wendi Martin sent an email to

(then assistant general manager) Tony Bricker regarding Plaintiff stating in relevant part:  "I

recommend coding all available to sick/vacation, then **reduce salary** by % relative to total hours

worked". (emphasis supplied).   Appendix pages 1-2; 9. This document contains a handwritten

notation, "**deducted salary (sic) of 9 hours** at 216.00 on 5/15/02)." (emphasis supplied).  This

deduction is confirmed on an earnings statement for period ending May 15, 2002 and shows a

deduction of 9 hours and $216.00 during this period. Appendix pages 1-2; 10.

On May 16, 2002,  a Time Off Report indicates that Defendant docked Plaintiff for 3

hours pay for physical therapy.  Appendix Pages 2; 11. An email by Vice President for Human

Resources Wendi Martin sent May 17, 2002, provides in relevant part: "We are okay with the

**reductions to Tia's pay**, but our attorney is recommending we pay her for all time and further

deduct her time off to more negative accrual.  We have also been advised to **deduct full days** out

of the office **going forward**. (emphasis supplied).  Appendix Pages 2, 12.

The May 17, 2002 email by Martin continues; "**We were legally okay in deducting**

**partial** and full **days** since we could use towards her Family and Medical Leave Act entitlement,

which out of courtesy we have chose (sic) not to charge against the 12 weeks of same ... There

has been no discrimination from what I have reviewed on file." (emphasis supplied).  However,

contrary to Martin's assertions, Plaintiff was not on FMLA leave until June 10, 2002 (to

September 2, 2002) – months after the email of May 15, 2002 acknowledging partial day

6

"reductions" to Plaintiff's pay. Appendix Pages 2-13. Plaintiff was not on Family and Medical Leave Act leave when the hourly deductions were made to her pay in May. Appendix Pages 2, 13.

On September 15, 2003, Adrienne Holliday from Human Resources sent an email to Plaintiff stating in relevant part: "However your paycheck did have a negative adjustment as a result of the sick time you took in August. You were out sick 8/15 and 8/18 for a total of 16 hours but you only had 4 hours of paid sick time available. **The other 12 hours was considered unpaid time off.** (emphasis supplied). Holly communicated that you would only be paid for the sick time you had available when she addressed absenteeism with you on 08/27/03". Appendix Pages 2; 14-15.

Plaintiff's paycheck for September 15, 2003 shows she was paid at an **hourly rate** of $23.9990 for a total of 74.67 hours. The $23.9990 is an hourly rate and it was applied against a total of 74.67 hours for the paycheck issued of September 16, 2003. Appendix Pages 2, 16.

In summary, Defendant deducted nine hours from Plaintiff in May, 2002, three hours in May, 2002, and sixteen hours on September 15, 2002. Accordingly, Plaintiff was not a salaried employee and therefore not exempt from the overtime provisions of the Fair Labor Standards Act. 29 C.F.R. §541.118(a)(1).

## LAW: SUBJECTING AN EMPLOYEE TO DISCIPLINARY DEDUCTIONS NEGATES EXEMPT STATUS.

The salary basis test specifically provides that disciplinary deductions for exempt employees may only be made if such penalties are imposed "in good faith for infractions of safety rules of major significant". 29 C.F.R. §541.118(a)(5).

7

Courts of Appeals have concluded that the exemption is lost where an employee may be suspended without pay for a period of less than one week for violating ordinary rules that govern employee conduct. Hurley v. Oregon, 27 F.3d 392, 394-95 (9th Cir. 1994) (officers subject to police department policy of imposing "economic sanctions" for violation of variety of department rules not paid on salary basis); Klein v. Rush Presbyterian-St. Luke's Med. Ctr., 990 F.2d 279, 284-85 (7th Cir. 1993)( code of conduct subjecting employee to unpaid disciplinary suspension for minor infractions of code including tardiness violated salary basis test); Shockley v. City of Newport News, 997 F.2d 18, 24 (4th Cir. 1993)(failure by police officers to report absences from work not a violation of safety rule of major significant).

The Supreme Court has held that even just a "significant likelihood" of disciplinary or other deductions defeats exempt status. Auer v. Robbins, 519 U.S. 452 (1997). The Supreme Court adopted a "practical test" advanced by the Secretary of Labor:

> The Secretary of Labor … interprets the salary test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met, the Secretary says, if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions. The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy – one which "effectively communicates" that deductions will be made in specified circumstances. Auer 519 U.S. at 461.

The Code of Federal Regulations provides that "Safety rules of major significant include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.". 29 C.F.R. §541.118(a)(5). A requirement that an employee come to work on time falls outside of this class. Cash v. Conn Appliances, Inc., 2 F.Supp.2d 884 (DC ED Texas 1997) fn14.

8

**PLAINTIFF WAS DISCIPLINED AND SUBJECT TO DISCIPLINARY DEDUCTIONS FOR NONSAFETY RELATED REASONS NEGATING EXEMPT STATUS.**

Defendant disciplined Plaintiff and made it clear to Plaintiff that she was subject to discipline salary deductions for nonsafety related reasons on at least five occasions.

On August 22, 2002, Defendant required Plaintiff to sign a memo acknowledging that employees who are sick or late are required to call DFW Customer Service Manager Gena Potter directly at least 30 minutes prior to the employee's scheduled start time. The memo emphasized the failure to follow these instructions will result in disciplinary action. Appendix Pages 3, 17.

On December 27, 2002 Defendant disciplined Plaintiff for unexcused absence. According to the document, the next action steps would be first suspension and then termination. Language added to the form states that continued "abuse ... will result in correction actions which may include conversion to an hourly pay status, suspension and up to termination". Appendix Pages 3, 18-19.

On March 27, 2003, Defendant indicated to Plaintiff that it was removing the December 27, 2002, disciplinary report from her file but added that she would be expected to comply with Defendant's company policies which include the attendance policy in the HR Manual, Section 2-3 Work Schedule and Section 1-4 Standards of Conduct. Appendix Pages 3-4; 20-24. The Work Schedule policy referred to provides in relevant part that excessive absenteeism, lateness or leaving early may lead to disciplinary action. Appendix Pages 3-4; 20-24. The Standards of Conduct policy referred to provides a nonexclusive list of activities which can result in discipline including not only safety issues but also unsatisfactory or careless work, failure to meet production or quality standards, mistakes due to carelessness or failure to get necessary

9

instructions, harassment, leaving work before the end of the workday or not being ready at the start of a workday without manager approval, stopping work before the time specified for such purposes, sleeping on the job, loitering or loafing during work hours, excessive use of the telephone for personal calls, smoking at non-designated times, creating unsanitary conditions, posting removing or altering postings on bulletin boards without permission, failure to report an absence or late arrival, excessive absences or lateness, obscene or abusive language, indifference or rudeness, soliciting during work hours and/or in working hours, failure to maintain a neat and clean appearance, failure to use a timecard, alteration of timecard or attendance documents, punching or altering another employee's timecard or causing someone to alter your own timecard. Appendix Pages 3-4; 20-24.

On June 24, 2003 Defendant again disciplined Plaintiff for unexcused absence and a violation of policy. Appendix Pages 4, 25-27. This discipline specifically provided that Plaintiff must not have scheduled time off within the next 30 days or be subject to further disciplinary action. Appendix Pages 4, 25-27.

On June 29, 2004, Vice President for Human Resources Wendi Martin emailed Plaintiff specifically advising that if the pattern for absenteeism (under a doctor's care or not) is excessive as defined in the policy, then "yes", it would result in disciplinary action. Appendix Pages 4, 28-29.

In summary, Defendant informed Plaintiff she was disciplined on December 27, 2002 and June 24, 2003 and subject to disciplinary deductions for nonsafety related reasons on August 22, 20002, March 27, 2003, and June 29, 2004. Accordingly, Plaintiff was not exempt as an administrative employee. 29 §541.118(a)(1); Auer, supra.

10

LAW: EXEMPTION REQUIREMENT THAT PRIMARY DUTY BE PERFORMING OFFICE OR NONMANUAL WORK RELATING TO MANAGEMENT POLICIES OR GENERAL BUSINESS OPERATIONS OF EMPLOYER

Primary Duty

An employee is exempt if the employee's primary duty consists of performance of office or non-manual work directly related to the management or general business operations of the employer 29 C.F.R. §541.2.

The term primary duty means the principal, main, major or most important duty that the employee performs. 29 C.F.R. §541.206.

Directly related to the management or general business operations

The phrase directly related to the management or general business operations refer to activities relating to the administrative operations of a business as distinguished from "production" work. 29 C.F.R. §541.205.

This District Court and the Fifth Circuit as well as other courts have held that the administrative exemption turns on whether the employee is performing "production work" as opposed to administrative tasks that are of substantial importance to the management of operation of the business. Dalheim v. KDFW-TV, 706 F. Supp. 493 (N.D.Tex. 1988), aff'd 918 F.2d 1220 (5th Cir. 1990):

> That [KDFW] argument [that the concept of "production" applies to blue collar manufacturing employees and not white-collar news producers] makes little sense. Section 541.205(a) is not concerned with distinguishing between white collar and blue collar employees, or between service industries and manufacturing industries. The distinction §541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is

11

producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market. <u>Dalheim</u>, supra at 1230.

Applying the foregoing standard, the Fifth Circuit. found that news producers were not exempt because their responsibilities began and ended with the portion of the newscast they were working on and continued to find they were not responsible for setting business policy, planning the long- or short- term objectives of the news department, promoting the newscast, negotiating salary or benefits with other department personnel, or any of the other types of "administrative tasks noted in §541.205(b).

The Fifth Circuit's Dalheim decision has been followed by other circuit courts as well; <u>Reich v. New York</u>, 3 F.3d 581, 587-88 (2nd Cir. 1993)(holding investigators "produce" investigations and do not administer the affairs of their employer); <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896, 903 (3rd Cir. 1991)(holding inside salespeople "produce" sales); <u>Bratt v. County of Los Angeles</u>, 912 F.2d 1066, 1070 (9th Cir. 1990)(applying analysis to probation officers and child treatment counselors).


PLAINTIFF'S PRIMARY DUTIES WERE NOT OFFICE OR NON-MANUAL WORK RELATING TO THE MANAGEMENT POLICIES OR GENERAL BUSINESS OPERATIONS OF DEFENDANT NEGATING EXEMPT STATUS

Plaintiff's primary duties were customer satisfaction. Plaintiff clearly was a "production employee" tasked to deal with customers and provide customer satisfaction. Plaintiff did not perform management or generation business operations of the company.

Plaintiff began her employment with Defendant in July, 19, 2000, simply training. In August, she was assigned as a "pickup person". Her duties as a pickup person were to enter

information into the computer.  After a month or so, she began answering the telephone if the

receptionist wasn't present taking information and directing the caller to whoever was handling

the caller's account.  If there were any questions, she transferred the caller to customer service.

Appendix Page 5.

Toward the end of September, 2000, after two or two and a half months of employment,

Plaintiff was assigned as a customer service representative.  In this position her duties were

supporting the sales people, providing rate quotes, answering the telephone, entering information

into the computer system and resolving general customer service issues. Appendix Page 5.

In approximately October, 2000, Plaintiff was assigned to a position as Customer

Service/Inside Sales Support Representative sometimes also called Customer Service Team

Member, and sometimes called Account Manager.  There were a number of names for this

position. This position was effectively the same as the position she was assigned to in September,

2000. Appendix Pages 5, 29.

Plaintiff's job description as Customer Service Team Member indicates she did not

supervisor any subordinate staff and the purpose of the position was to complete tasks involving

the telephone, data entry, and customer service.  Appendix Pages 5, 29.

According to the job description,  the detailed duties and responsibilities **IN ORDER OF**

**IMPORTANCE** (emphasis supplied) were:

Phone
        Responsible for understanding all the operational aspects of NAL's phone
        system
        Recognize every employee's extension, department & schedule

Customer Service
> Handle challenges in a pro-active manner.
> Familiarize herself with the function of all the operational departments
> Building a strong working relationship with the present client base
> Deliver P.O.D.s, flight information, and shipment history upon client request
> Maximize incoming information in order to access primary shipment information for clients
> Acquire pickups of all types & enter them in the computer
> Utilize company computer systems on every inquiry
> Apply basic problem solving procedures daily
> Transcribe quote information and return to clients in a timely manner with a good competitive quote
> Accurate read the OAG, ACI guide and any other resources
> Communicate accurate flight information via the OAG, on NGOs.

Data Entry
> Enter all pick information
> Enter P.O.D.s as soon as possible
> Add pertinent notes to the alert memo/shipment history
> Send accurate email (for what and whom)
> Alpha-page a sales person or another NAL employee
> Input carrier, delivery, and pickup cost directly into the computer system

In April, 2001, Plaintiff was assigned as a Customer Service Manager. The only change from her previous duties is that she attended weekly manager meetings. Although she was called a "manager", she could not hire, fire, discipline or have any control over the customer service department. The only changes were the title and the fact that she went to a weekly meeting. Appendix Page 6.

On April 8, 2002, Defendant assigned Plaintiff as an Inside Account Manager. As indicated by the job description, the Inside Account Manager had no subordinate staff and the purpose of the position was to work directly with the assigned account manager to handle all aspects of a particular customers requirements and assist in support of the customer service department. Appendix Pages 6, 30.

14

The detailed duties and responsibilities for this position **IN ORDER OF IMPORTANCE**

(emphasis supplied) were:

> Provide total customer service and satisfaction on all accounts
> Obtain shipment information from clients
> Maximize incoming shipment information
> Calculate quotes & proposals on domestic and international shipments for
>     assigned Outside Account Managers.
> Generate accurate domestic routings on all NFO's assigned
> Take pick ups of all kinds, domestic, international & local
> Initiate daily coordination with Sales Department
> Complete handle all problem shipments under her control
> When requested, be able to supply the following on every shipment:
>     a. Shipment location & status
>     b. Last action taken on the shipment
>     c. Full shipment history
> Generate all necessary reports for your assigned Outside Account Manager's
>     clients
> Monitor all shipments for her assigned Outside Account Manager
> Monitor cost of all pertinent shipments
> Rate shipments as assigned by District Accounting Supervisor, and
> Other duties as assigned.

In an email from General Manager Heather Barton to Lisa Pierce in the Human Resource

Department, Pierce inquired whether the change of from Customer Service Manager to an Inside

Account Manager was simply a title change. This was correct; it was nothing other than a title

change. Appendix Pages 7, 31. In addition, Pierce confirmed in the email there was no change in

pay. Appendix Pages 7, 31.

In summary, regardless of the position or title, Plaintiff's primary duties were customer

satisfaction involved in the production of services for clients. As a "pickup person" for the first

couple of months, she was assigned data entry and answering the telephone when the receptionist

was gone. As a customer service representative/inside sales support representative from

September of 2000 to April of 2001, her primary duty (according to Plaintiff's statement and the

15

job description) was being responsible for understanding all the operational aspects of NAL's phone system and recognizing every employee's extension, department and schedule as part of her overall duties of providing customer satisfaction. While she became a customer service manager in April 2001, the only change in her duties was to attend weekly manager meetings. When she became an Inside Account Manager in April, 2002, her primary duty was to "provide total customer service and satisfaction on all accounts". Defendant's email documents that the change from a Customer Service Manager to an Inside Account Manager was simply a title change.

Accordingly, Plaintiff did not engage in office or non-manual work relating to management policies or general business operations of Defendant and therefore was not an administrative employee exempt from the overtime provisions of the Fair Labor Standards Act. 29 C.F.R. §541.2; Dalheim, supra.


LAW: EXEMPTION REQUIREMENT OF EXERCISE OF DISCRETION AND INDEPENDENT JUDGMENT

An employee is exempt if the employee exercises discretion and independent judgment. 29 C.F.R. §541.2.

The exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. 29 C.F.R. §541.207(a).


Discretion and Independent Judgment as Distinguished from Skills and Procedures

According to the regulations, the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in

16

various respects. An employee who merely applies his or her knowledge in following prescribed procedures or determining which procedures to follow, or who determines whether specified standards are met, is not exercising discretion and independent judgment within the meaning of the regulations. 29 C.F.R. §541.207(c)(1); <u>Christenberry v. Rental Tools</u>, 655 F. Supp. 374, 377 (E.D. La. 1987), aff'd mem., 851 F.2d 1419, (5th Cir. 1988).

In addition, [t]his exercise of discretion and independent judgment must relate to matters of consequence. <u>Lott</u>, 203 F.3d at 331.

Moreover, in order to qualify for the administrative employee exemption, an employee must be required to exercise discretion and independent judgment customarily and regularly. 29 C.F.R. §541.207(g); <u>Heidtman v. County of El Paso</u>, 171 F.3d 1038, 1042 (5th Cir. 1999). Customarily and regularly means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed customarily and regularly includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks. 29 C.F.R. §541.207(g).

The phrase discretion and independent judgment must be applied in the light of all the facts involved in the particular employment situation in which the question arises. 29 C.F.R. §541.207(b).

17

Decisions in Significant Matter

The exercise of true discretion and independent judgment must concern matters of significance. As the regulations point out, there is a small amount of decision-making inherent in every job, but these decisions do not constitute the level of discretion and independent judgment contemplated by the administrative exemption. 29 C.F.R. §541.207(d)(1). Instead, that exemption applies to individuals who "exercise authority within a wide range to commit their employer in substantial respects financially or otherwise. 29 C.F.R. §541.207(d)(2).

## PLAINTIFF NEVER EXERCISED DISCRETION OR INDEPENDENT JUDGMENT IN ANY POSITION SHE HELD WITH DEFENDANT NEGATING EXEMPT STATUS

Plaintiff never exercised discretion or independent judgment in any position she held with Defendant.

Plaintiff's duties are discussed above in the section dealing with her primary duty and will not be repeated here again.

According to the job descriptions provided by Defendant and Plaintiff's Declaration, regardless of title, Plaintiff's job duties were to provide customer satisfaction. These duties did not involve discretion or independent judgment.

Working as a production employee producing "customer satisfaction", Plaintiff had never the authority to formulate, affect, or implement management policies or operating practices, did not carry out major assignments in conducting Defendant's business operations, did not perform work that affected Defendant's business operations to a substantial degree, did not have authority to waive or deviate from established policies and procedures without prior approval, could not

18

negotiate or bind the company on significant matters, did not plan long term or even short term business objectives.

According, Plaintiff did not exercise discretion or independent judgment sufficient to make her an exempt administrative employee.


## LAW: DAMAGES

Employers are required by the Fair Labor Standards Act to pay covered employees one and one half times their "regular rate" for each hour, or fraction thereof, worked in excess of forty hours during any given workweek. 29 U.S.C. §297(a)(1).


### Regular Rate of Pay

An employee's regular rate of pay is defined under Section 7(e) of the Fair Labor Standards Act as "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. §207(e).

Where an employee is "salaried", the overtime rate is computed by dividing the actual hours worked each workweek into fixed salary (giving "regular rate" for week) and multiplying the rate by one and one half times number of overtime hours worked weekly).See, e.g. Cox v. Brookshire Grocery Co., 919 F.2d 354, 357 (5th Cir. 1990).


### Compensable Hours

The Fair Labor Standards Act requires that every employer subject to the Act SHALL make, keep, and preserve records regarding wages, hours and other conditions of employment.

19

29 U.S.C. §211(c). The DOL regulations further define categories of records which an employer

is required to keep on each employee for up to three years. 29 C.F.R. §516.2, §516.6.

Among the information required to be kept by 29 C.F.R. §516.2(a) is:

> 1. The regular hourly rate of pay for any workweek in which overtime compensation is due, the basis of pay (i.e. per hour or per day), and the amount and nature of each payment which is excluded from the regular rate.
>
> 2. Hours worked each workday and total hours worked each workweek
>
> 3. Total daily or weekly straight-time earnings or wages
>
> 4. Total overtime pay
>
> 5. Total additions to or deductions from wages paid each pay period
>
> 6. Total wages paid each pay period, and
>
> 7. Date of payment and the pay period covered by payment.

Some records must be preserved for two years and some for three years. 29 C.F.R.

§516.5-6.

The United States Supreme Court has held that, in the absence of employment records,

wages owed to an employee should be awarded, even if approximate, if the evidence shows the

employee performed work for which there was improper compensation, and the amount and the

extent of work can reasonably be inferred. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680,

687 (1946). The burden of proof then shifts to the employer to come forward with evidence of the

precise amount of work performed or with evidence to negate the reasonableness of the inference

drawn from the employee's evidence. Anderson, supra at 687; Marshall v. Partida, 613 F.2d

1360, 1363 (5th Cir. 1980) (lower court reminded not to penalize laundromat attendants by

denying back wages if they were unable to prove precise extent of uncompensated work);

20

Mitchell v. Mitchell Truck Line, 286 F.2d 721, 726 (5th Cir. 1961) (back wages for truck drivers could be awarded as long as there was certainty of damage even if there was uncertainty as to extent of damage).

Statute of Limitations

The Fair Labor Standards Act provides a period of two years (after the cause of action accrued" in which to file a complaint for unpaid overtime. 29 U.S.C. §255(a).

The Fair Labor Standards Act limitations period is extended to three years after a cause of action accrues for violations that are "willful". 29 U.S.C. §255(a).  The United States Supreme Court has held that the standard of willfulness is whether the defendant either knew its conduct violated the Fair labor Standards Act or showed reckless disregard for whether its actions complied with the Act.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

If there are no fact issues about when limitations begins to run, the defense of limitations is appropriate for summary judgment.  BellSouth Telecomm, Inc. v. W.R. Grace & Co., 77 F3d 603, 609 (2nd Cir. 1996); McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995).


**PLAINTIFF'S DAMAGES ARE $25,380.00 USING THE TWO YEAR STATUTE OF LIMITATIONS AND $59,933.25 USING THE THREE YEAR STATUTE OF LIMITATIONS**

Defendant failed to produce any records of the number of hours Plaintiff worked.   Where the employer does not keep records of hours worked as required by law, 29 U.S.C. §211(c); 29 C.F.R. §516.2, §516.6, then the employee may testify as to how many hours she worked and the

burden shifts to the employer to prove that the hours claimed by the employee are inaccurate. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-689 (1946).

According to Plaintiff's Declaration, Appendix Pages 7-8; 32-34, she worked as set forth below:

| | |
|---|---|
| June 3, 2001 to March 31, 2002 | 62.5 hours per week |
| April 7, 2002 to May 26, 2002 | 40 hours per week |
| June 2, 2002 to August 18, 2002 | off (childbirth) |
| August 25, 2002 to April 27, 2003 | average 52.5 hours per week |
| May 4, 2003 to August 31, 2003 | 50 hours per week |
| September 7, 2003 to December 14, 2003 | 45 hours per week |

According to Plaintiff's Declaration, Appendix Pages 7-8, 32-34, Defendant paid her:

$48,000 per year ($23.08 per hour) from June 3, 2001 to January 27, 2003

$49,920 per year ($24.00 per hour) from February 3, 2003 to December 13, 2003

Plaintiff's complaint was filed on June 1, 2004.

Going back two years from June 1, 2004 would be June 1, 2002. Going back three years from June 1, 2004 would be June 1, 2001.

Plaintiff has generated a spreadsheet calculating her damages from the number of hours worked and the regular rate of pay from Defendant using both the two year and the three year statute of limitations.. Appendix Pages 32-34. As indicated on the spreadsheet, her damages going back two years from the filing of the Complaint are $25,380 and her damages going back three years from the filing of the Complaint are $59,933.00.

22

LAW: LIQUIDATED DAMAGES

Section 216(b) of the Fair Labor Standards Act provides that any employer who violates

the statute **SHALL** be liable for unpaid minimum wages and overtime pay, and an additional

equal amount as "liquidated damages" 29 U.S.C. §216(b).

In <u>Reich v. Tiller Helicopter Services, Inc.</u>, 8 F.3d 1018, 1030 (5th Cir. 1993), the Fifth

Circuit, consistent with other courts, has construed this language to mandate the award of

liquidated damages. See also <u>LeCompte v. Chrysler Credit Corp.</u>, 780 F.2d 1260, 1262-1263 (5th

Cir. 1986). An employer may not avoid liquidated damages unless the employer sustains the

"substantial burden" of persuading the court by proof that its failure to obey the Fair Labor

Standards Act was both in good faith and predicated upon reasonable grounds. 29 U.S.C. §260;

<u>Tiller Helicopter</u>, supra at 1031; <u>Bernard v. IBP Inc. of Neb.</u>, 154 F.3d 259, 266-267 (5th Cir.

1998). <u>Mireles v. Frio Foods</u>, 899 F.2d 1407, 1415 (5th Cir. 1990) (liquidated damages equal to

back pay required absent finding that employer acted both in good faith and with reasonable belief

that Fair Labor Standards Act not violated).

**PLAINTIFF IS ENTITLED TO $25,380.00 IN LIQUIDATED DAMAGES USING THE TWO YEAR STATUTE OF LIMITATIONS AND $59,933.25 USING THE THREE YEAR STATUTE OF LIMITATIONS**

As indicated above, liquidated damages are simply an amount equal to the actual damage.

Since the actual damage using the two year statute of limitations is $25,380.00, the liquidated

damage using this statute is $25,380.00 as well.

23

Since the actual damage using the three year statute of limitations is $59,933.25, the liquidated damage using this statute is $59,933.25 as well.

WHEREFOR, PREMISES CONSIDERED, Plaintiff prays for summary judgment that:

1. She is not exempt from the overtime provisions of the Fair Labor Standards Act

2. That she had actual damages in the amount of $59,933.25 over a period of three years prior to the filing of her complaint or, in the alternative, actual damages in the amount of $25,380.00 over a period of two years prior to the filing of the complaint.

3. That she is entitled to liquidated damages in the amount of $59,933.25 or, in the alternative, liquidated damages in the amount of $25,380.00.

4. That Plaintiff is entitled to court costs and attorneys fees to be determined.

Respectfully submitted,

William Lamoreaux
Texas Bar No. 11852800
Attorney for Plaintiff Tia McNeese
900 Jackson Street Suite 180
Dallas, Texas 75202
Telephone       (214) 747-2012
Facsimile       (214) 747 –3212

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to Defendant's counsel in accordance with the Federal Rules of Civil Procedure

Mike Royal
Locke Liddell & Sapp LLP
2200 Ross Avenue Suite 2200
Dallas, Texas 75201-6776

on the _____ day of ___October_____, 2005.

William Lamoreaux